UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-61234

TAYLOR ONLINE MARKETING.COM, INC.,
a California corporation,

    Plaintiff,

v.

JUSTIN T. BRAIN, and
NATIONAL CAR SHIPPING INC,
a Florida corporation,

    Defendants.

## COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff, Taylor Online Marketing.com, Inc., by and through its attorney, Griffin Klema, Esq., and sues Justin Brain and National Car Shipping Inc for damages:

### JURISDICTION & VENUE

1. This is an action for damages in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of costs or attorney's fees.

2. Plaintiff, Taylor Online Marketing.com, Inc., ("TOLM") is a corporation organized under the laws of and having its principal place of business in the State of California. TOLM is a citizen of California.

3. Defendant Justin T. Brain ("Brain") is a resident of Broward County, Florida, and is otherwise *sui juris*. Brain is permanently domiciled in and a citizen of

Florida.

4. Defendant National Car Shipping Inc ("NCS") is a Florida corporation having its principle place of business in Broward County, Florida and is otherwise *sui juris*. National Car Shipping is a citizen of Florida.

5. There is complete diversity of citizenship between the parties, with plaintiff being a California citizen and defendants being Florida citizens.

6. This Court has subject matter jurisdiction under diversity of the parties and the amount in controversy exceeding $75,000, pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1).

7. This Court has personal jurisdiction over the defendants because they reside in this District.

8. Venue is proper under 28 U.S.C. § 1391(b) in the Southern District of Florida because all of the defendants reside or conduct business in the District, and the conduct giving rise to this lawsuit also occurred there.

## ALLEGATIONS COMMON TO ALL COUNTS

### TOLM's Business and Lead Generation for its Clients

9. TOLM is an industry-leading online marketing business which provides targeted lead generation for its customers ("Leads") including persons seeking certain business services such as transport of goods and vehicles. TOLM provides Leads to its customers in a proprietary bid-for-leads model, whereby a customer receives more Leads if its bid(s) are higher than other customers seeking the same types of Leads.

10. Leads are a time-limited and thus perishable item, often being in-the-

moment requests or searches online by prospective customers seeking various business goods or services. Time is of the essence in connecting a prospective customer with TOLM's bidding clientele. Due to the nature of the marketplace, Leads are time-sensitive whereby a customer's interest in a certain type of good or service is often urgent, fleeting, or otherwise more valuable the sooner that prospective customer is connected with a business that can provide the good or service to that customer. TOLM's business model fulfills that urgent connection of a customer-in-search to the appropriate and highest bidding of its clients.

11. Leads are also individualized such that they cannot be duplicated or sold to more than one customer. A Lead is routed by TOLM to its bidding client whereby the client then assumes direct one-on-one contact with the Lead to the exclusion of other TOLM clients. The Leads which TOLM provides to its customers are valuable, and the competitive bidding market sets the value of those Leads, not TOLM. Once provided to a particular customer, a Lead cannot be provided to another customer. Similarly, Leads are not tangible, and thus cannot be repossessed if TOLM's clientele refuses to pay fair value for a Lead. Leads are bid on, routed, and essentially consumed by TOLM's clients.

12. Due to the variable nature of the bidding process and fluctuating customer demand for products and serves which TOLM's clients provide, TOLM bills its clients after Leads are routed to and consumed by its clients.

13. Certain of TOLM's clients provide their bank account details, and agree to allow TOLM to debit the client's account for the Leads a client bids on and wins.

### National Car Shipping and Brain Become Clients of TOLM

14. Initially, defendant Brain became familiar with TOLM and used TOLM's services to obtain Leads for his own personal benefit in connection with his selling of insurance products.

15. As part of the dealings between Brain, NCS, and TOLM, Brain provided his bank account information to TOLM so that TOLM could debit his account for Leads according to the agreement. Brain provided express written authorization to TOLM:

> From: justin brain <justin@nationalcarshippinginc.com>
> Sent: Monday, September 5, 2022 5:32 PM
> To: Sheree Taylor <sheree@tolm.co>
> Subject: Re: Call Report - National Car Shipping
>
> Hello ! From now on can you just do the e check draft from my business checking?
>
> National Car Shipping INC
> Account number
> ▆▆▆▆2380
> Routing number
> ▆▆▆▆4131

Attached as Exhibit 1 is a redacted email from Brain providing his account number and authorization.

16. Brain continued to utilize TOLM's services and received Leads for other of his businesses, including defendant National Car Shipping.

17. Brain and National Car Shipping benefitted from the Leads, and derived income from their use of and converting of those Leads into paying customers.

18. After a period of time bidding for, receiving, and paying for Leads, Brain increased his bids to obtain more of them for National Car Shipping.

19. As a result of Brain's increased bid and in reliance on the prior automatic clearing house (ACH) transactions on which Brain made full and timely payment, TOLM delivered Leads to Brain and National Car Shipping.

20. After increasing his bid and receiving the valuable single-use Leads, Brain and National Car Shipping became indebted to TOLM for the bid-value of them as requested by Brain. The value of Leads bid for and received by Brain totaled $12,068 for Leads received between January 23, 2023 and January 29, 2023.
Consistent with Brain's allowing TOLM to debit Brain's bank account and consistent with the parties' conduct of bid-receive-pay for Leads, TOLM then attempted to debit Brain's bank account on February 1, 2023, at about 5:26 PM in the amount of $12,068 for Leads received. Exhibit 2.

21. Brain's bid for Leads continued into the following week for January 30, 2023, through February 5, 2023. Brain knew these bids would continue given his prior instructions to TOLM on bid amount and the volume of Leads he received and handled. Brain and National Car Shipping became indebted to TOLM for the bid-value of them as requested by Brain. The value of Leads bid for and received by Brain totaled $11,409 for Leads received between January 30, 2023 through February 5, 2023.

22. Consistent with Brain's allowing TOLM to debit Brain's bank account and consistent with the parties' procedure of bid-receive-pay for Leads, TOLM then attempted to debit Brain's bank account on February 6, 2023, at about 11:24 PM in the amount of $11,409 for Leads received. Exhibit 3.

23. The following day, on February 7, 2023, Brain's bank notified TOLM that it is dishonoring the February 1 ACH transaction as "R01 Insufficient Funds." Exhibit 4. On information and belief, Brain separately became aware of the insufficient funds in his account directly from his financial institution on or about February 3, 2023, yet Brain did not advise TOLM of any issues concerning funds availability or his ability to pay. Exh. 3.

24. Promptly upon receiving that information, TOLM forwarded the NSF notice to Brain and requesting payment, who replied in writing that he "checked [his] bank and [his] merchant hasn't sent money since Thursday" and also requested that TOLM "[t]urn off the calls until [he] figure[d] out what's going on." Exh. 4.

25. Before Brain requested that his bids be effectively reduced to $0 ("turning off" the Lead calls) TOLM had sent Brain and National Car Shipping Leads, and they had received a partial week of Leads for February 6 and 7, 2023, on which he bid $4,030.

26. TOLM continued its efforts to discuss the outstanding balance then-owed by Brain totaling $27,523.00 (including two $8 NSF fees), but he failed to respond. As a result, on February 13, 2023, TOLM, through counsel, sent Brain and National Car Shipping a demand for payment of the two dishonored payments (only) totaling $24,650.85. Exhibit 5.

27. Brain and National Car Shipping failed to tender any payment whatsoever and failed to respond to the letter, thus forcing TOLM to bring this action.

### National Car Shipping is the alter ego of Justin Brain

28. On information and belief, Brain runs National Car Shipping as mere front and alter-ego of himself. He operates and otherwise treats NCS as an alter ego and/or mere instrumentality in securing the Leads and obtaining the value of them without payment to TOLM as described herein. Thus, plaintiff is entitled to pierce the corporate veil of NCS to reach the assets of Brain.

29. For all purposes, Brain and NCS are single economic entities. Brain is the purported owner and controls NCS. Brain dominated and controlled NCS to such an extent that NCS's ostensible independent existence is in reality nonexistent.

30. On information and belief, Brain disregarded the corporate formalities of National Car Shipping.

31. Brain improperly and deliberately used National Car Shipping as a mere sham to obtain value from TOLM, fail to pay TOLM for Leads he received and which, on information and belief resulted in paying customers of National Car Shipping and which further directly benefitted Brain financially.

32. Brain dominated and controlled NCS to such an extent that NCS's independent existence was non-existence, and Brain was an alter-ego of NCS.

33. Brain's improper use of NCS caused TOLM injury by diverting the Leads from other TOLM clients who would have paid for those Leads.

34. Therefore, Brain is personally liable for the injuries caused and damages befalling TOLM.

35. TOLM has been obligated to pay a reasonable fee for its representation

and pursuit of its claims against the defendants.

## Count I – Breach of Contract

TOLM realleges the allegations contained in paragraphs 1 through 36 and incorporates same herein by reference.

36. The communications between TOLM and Brain constitute an agreement whereby TOLM agreed to provide Brain and NCS with Leads in exchange for payment from Brain. The agreement further provided an increase or decrease in the number of Leads based on the price Brain was willing to pay for those Leads and further based on the competitive market rate of TOLM's other customers.

37. Brain and NCS materially breached the agreement by failing to pay for the Leads that they received.

38. TOLM has been damaged by Brain's and NCS's breach of the agreement by failing to receive the funds which NCS agreed to pay in exchange for the Leads.

**WHEREFORE,** Plaintiff TOLM hereby demands judgment against defendants Justin Brain and National Car Shipping Inc, jointly and severally, for damages in the amount of $27,523, plus interest, costs, and for such further relief as the Court deems proper.

## Count II – Unjust Enrichment

TOLM realleges the allegations contained in paragraphs 1 through 36 and incorporates same herein by reference. In the alternative to Count I, TOLM pleads unjust enrichment against the defendants.

39. TOLM conferred a benefit on Brain and NCS in the form of the Leads,

and Brain and NCS knew of the value and benefit of those Leads.

40. Brain and NCS accepted the Leads, thus retaining the benefit which TOLM conferred upon them.

41. Under the circumstances it would be inequitable for Brain and NCS to retain the benefit of the Leads without paying value therefore.

42. TOLM has been damaged by Brain's and NCS's actions.

**WHEREFORE,** Plaintiff TOLM hereby demands judgment against defendants Brain and National Car Shipping Inc, jointly and severally, for restitution in the amount of $27,523, plus interest, costs, and for such further relief as the Court deems proper.

### Count III – Worthless Payment Instrument
§ 68.065, Fla. Stat.

TOLM realleges the allegations contained in paragraphs 1 through 36 and incorporates same herein by reference.

43. Each of the two electronic funds transfer debits constitute a payment instrument. Fla. Stat. § 68.065(1).

44. The debits were authorized by Brain and drawn on National Car Shipping's bank account when he had actual or constructive knowledge that there was a lack of funds. After Brain's explicit instructions for TOLM to debit his account, Brain received Leads from TOLM at a time when he knew he did not have funds available to pay for TOLM's debits of his account.

45. TOLM has been damaged as a result of the defendants' conduct, and is

entitled to the face value of the debits together with an *additional* three times the amount of the face value, plus court costs and reasonable attorney fees incurred by TOLM in pursuing this action. NASR Int'l Trading Co. v. Rahul Int'l Inc., 675 So. 2d 704, 705 (Fla. 3d DCA 1996) (construing § 68.065 as effectively providing for four times damages).

**WHEREFORE,** Plaintiff TOLM hereby demands judgment against defendants Brain and National Car Shipping Inc, jointly and severally, for damages and three times the face value of the instruments in the total amount of $93,908, plus interest, attorney's fees pursuant to § 68.065, Fla. Stat., costs, and for such further relief as the Court deems proper.

Dated: June 27, 2023.

    /s/ Griffin Klema
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Griffin@KlemaLaw.com
**Klema Law, P.L.**
PO Box 172381
Tampa, FL 33672
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292
*Attorney for Plaintiff*